IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

ANDERSON DIVISION

| | |
|---|---|
| Burton Hagwood,<br><br>                Plaintiff,<br><br>   vs.<br><br>US Department of Justice; Federal Bureau of Prisons; S.A. Yates; Warden FCI Allenwood, M.E. Ray, Regional Director Northeast Region Bureau of Prisons; J. Gibson, Administrator of the Detention Center Unit at USP Atlanta; Warden JV Smith, Warden at FCI Edgefield; L. Guevara, Assistant Administrator Health Services, FCI Edgefield; Dr. Serrano, Dr., FCI Edgeild; L. Rosario, Administrator of Health Services, FCI Edgefield; Warden J. Lamanna; E. Slater,<br><br>                Defendants. | Civil Action No. 8:04-1871-CMC-BHH<br><br>**REPORT OF MAGISTRATE JUDGE** |

      The plaintiff, a federal prisoner proceeding pro se, filed this action pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) (cause of action under the Constitution of the United States against federal officials for the violation of federal constitutional rights). The defendants have filed a motion to dismiss based on lack of subject matter jurisdiction, personal jurisdiction, failure to exhaust administrative remedies, qualified immunity, and respondeat superior. By order, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the motion to dismiss procedure and the possible consequences if he failed to adequately respond to the motion. On June 26, 2006, the plaintiff filed a response. The plaintiff and the defendants subsequently filed a reply each.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(e), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed by individuals proceeding *pro se* and submit findings and recommendations to the District Court.

## **FACTUAL BACKGROUND**

In the instant case, the plaintiff is presently housed at the Federal Correctional Institution in Glenville, West Virginia (FCI Gilmore). He represents that he is "an amputee (right arm), and suffers from Phantom Pain, requiring assistance from pain medication to "manage the pain . . . ." ([Doc. 25] Supp. Resp. Mot. Definite Statement at 2.)  The plaintiff originally brought this action in United States District Court for the District of Columbia. By order of that court dated April 13, 2004, the action was transferred to the District Court for the District of South Carolina. The plaintiff at that time was housed in FCI Edgefield in South Carolina.  In his complaint, the plaintiff alleges various civil rights violations. Specifically, he alleges he was denied necessary medical care while a holdover at the United States Penitentiary ("USP") Atlanta, Georgia; was denied adequate housing; was denied adequate pain medication for the phantom pain in his amputated arm; was denied access to the law library; was placed in the Special Housing Unit ("SHU") on false disciplinary charges; was not given an MRI in a timely manner; and was retaliated against in various ways for filing grievances.  He seeks $3,000,000 from the defendants jointly; $1,000,000 for pain and suffering for 20 months and $2,000,000 for future medical expenses.

The defendants filed a motion for a more definitive statement to clarify the issues in this case.  The plaintiff was ordered to file an amended complaint, but did not. Instead, he filed two responses to the defendants' motion, docket numbers 23 and 25.  (Resp. Mot. Definite Statement, Nov. 22, 2004, & Supp. Resp. Mot. Definite Statement, Dec. 1, 2004.)

These documents have been construed by the Court as an amended complaint. (Order dated January 26, 2005, [Doc. 33].)

## APPLICABLE LAW

### LIBERAL CONSTRUCTION OF *PRO SE* COMPLAINT

The petitioner brought this action *pro se*. This fact requires that his pleadings be accorded liberal construction. *Estelle v. Gamble*, 429 U.S.97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); *Loe v. Armistead*, 582 F.2d 1291 (4th Cir.1978); *Gordon v. Leeke*, 574 F.2d 1147 (4th 1978). *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. *Hughes v. Rowe*, 449 U.S. 5 (1980) (per curiam). Even under this less stringent standard, however, the *pro se* Complaint is still subject to summary dismissal. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir.1999). A court may not construct the petitioner's legal arguments for him. *Small v. Endicott*, 998 F.2d 411 (7th Cir.1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir.1985).

### MOTION TO DISMISS STANDARD OF REVIEW

In evaluating a complaint for purposes of a motion to dismiss, the court must "assume the facts alleged in the relevant pleadings to be true, and . . . draw all reasonable inferences therefrom." *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 591 (4th Cir. 2004). A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses. *See Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir.1992). "A Rule 12(b)(6) motion to dismiss should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief."

*T.G. Slater & Son, Inc. v. Donald P. & Patricia A. Brennan LLC*, 385 F.3d 836, 841 (4th Cir.2004) (internal citations omitted). However, a court may consider the materials attached to the complaint in deciding a Rule 12(b)(6) motion based on exhaustion. *See Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001). Similarly, 12(b)(1) motions for lack of jurisdiction may consider evidence outside the complaint that bear on the issue of jurisdiction. *See McCoy v. Goord*, 255 F. Supp. 2d 233, 249 (S.D.N.Y. 2003) (collecting cases).

## DISCUSSION

### I.    SUBJECT MATTER JURISDICTION

The defendants first contend that this court lacks subject matter jurisdiction over the plaintiff's claims against the Department of Justice, Bureau of Prisons, and the individual defendants in their official capacities. The Court agrees. A *Bivens* action cannot lie against either the United States or against federal agents acting in their official capacities. *See Doe v. Chao,* 306 F.3d 170, 184 (4th Cir. 2002) ("Bivens action does not lie against either agencies or officials in their official capacity."); *Smith v. Warden of USP-Atlanta,* 2006 WL 1967054, at *3 (D.S.C. July 12, 2006) (Anderson, J.). First, "[i]t is axiomatic that the United States may not be sued without consent and that the existence of consent is prerequisite to jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). Second, a suit against a federal agency or federal officer in his or her official capacity is equivalent to a claim against the United States. *See Will v. Dept. of State Police*, 491 U.S. 58, 71 (1989). The plaintiff does not allege - and the defendants do not concede - that there has been a waiver of sovereign immunity in this action. Thus, to the extent the defendants are being sued under *Bivens* in their official capacities, the claims are barred by the doctrine of sovereign immunity. And, certainly, the Department of Justice and the Bureau of prisons are not subject to suit for the same reasons.

4

Sovereign immunity, however, does not bar damage actions against federal officials in their individual capacities for violation of an individual's constitutional rights. *See Bivens*, 403 U.S. at 395-96; *Reinbold v. Evers*, 187 F.3d 348, 355 n.7 (4th Cir. 1999). Thus, to the extent the defendants are being sued in their individual capacities under *Bivens*, the plaintiff's claims are not barred by the doctrine of sovereign immunity and the Court has jurisdiction over those claims.

## II.   Exhaustion of Remedies

The entirety of the plaintiff's case must be dismissed because he has failed to exhaust his administrative remedies. The Prison Litigation Reform Act provides that: "No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). Exhaustion is required for, "[a]ll action[s]. . . brought with respect to prison conditions, whether under § 1983 or any other Federal law." *Porter v. Nussle*, 534 U.S. 516, 524 (2002) (internal quotations omitted). The PLRA's exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id*. at 532.

Thus, federal prisoners suing under *Bivens*, must first exhaust inmate grievance procedures in the same way that state prisoners must exhaust administrative processes prior to instituting a Section 1983 suit. *Id*. Exhaustion is a threshold requirement which must be satisfied in order for prisoner complaints to proceed. *See, e.g., Booth*, 532 U.S. at 741(exhaustion required even where prison grievance system does not permit award of money damages).

5

"To exhaust administrative remedies, a person must follow the rules governing filing and prosecution of a claim."[1] *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). Thus, the inmate must actually and strictly comply with the requirements of the administrative processes. *See Woodford v. Ngo,* 548 U.S. ___, at *11 (June 22, 2006) (holding that proper exhaustion requires "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits.)"); *Houze v. Segarra*, 217 F. Supp. 2d 394, 396 (S.D.N.Y. 2002) (and cases cited therein); *see also Booth*, 532 U.S. at 735 (noting that Booth failed to undertake any intermediate or appellate steps in the administrative process). An inmate's failure to "properly take each step within the administrative process. . . bars, and does not just postpone, suit under § 1983." *Pozo*, 286 F.3d at 1024 (emphasis added); *see also White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997) (dismissal is appropriate if the inmate fails to exhaust or only partially exhausts administrative remedies); *Massey v. Wheeler*, 221 F.3d 1030, 1034 (7th Cir. 2000) (same).

The defendants represent that the Bureau of Prisons has a three-tiered administrative grievance process. *See* 28 C.F.R. §§ 542.10 *et seq*. An inmate may complain about any aspect of his confinement by first seeking to informally resolve the complaint at the institution level. *See* 28 C.F.R. § 542.13; (Mot. Dismiss Ex. 1 ¶ 6). If the matter cannot be resolved informally, the inmate may file a formal written complaint to the warden. *See* 28 C.F.R. § 542.14; (Mot. Dismiss Ex. 1 ¶ 6). The matter will be investigated, and a written response provided to the inmate. *Id*. If dissatisfied with the response, the inmate may appeal to the Regional Director. *See* 28 C.F.R. § 542.15(a); (Mot. Dismiss Ex.

---

[1] Case law involving Section 1983 claims is applicable in *Bivens* actions and vice versa. *See Farmer v. Brennan*, 511 U.S. 825, 840-41 (1994); *see also Turner v. Dammon*, 848 F.2d 440, 443-444 (4th Cir.1988); *Osabutey v. Welch*, 857 F.2d 220, 221-223 & n.5 (4th Cir.1988).

1 ¶ 6).  If dissatisfied with the regional response, the inmate may appeal to the General Counsel.  *See* 28 C.F.R. § 542.15(a)*;* (Mot. Dismiss Ex. 1 ¶ 6). Appeal to the General Counsel is the final level of agency review.  *See* 28 C.F.R. § 542.15(a);  (Mot. Dismiss Ex. 1 ¶ 6). Thus, a claim has not been administratively exhausted until it has been filed with the General Counsel.

The defendants have submitted evidence that the plaintiff has not exhausted his administrative remedies with respect to any of the issues presented in the Amended Complaint. (Mot. Dismiss Ex. 1 ¶16). The defendants concede that the plaintiff did file a "Request for Administrative Remedy" with respect to the law library claims, the denial of a soft shoe pass and the dosages of gabapentin; however, he failed to file these grievances at the national level.  (Mot. Dismiss Ex. 1 ¶¶ 10-11.)  The plaintiff also attempted to file an initial grievance at the institution level concerning his transfer from FCI Allenwood to FCI Edgefield; his placement in the Special Housing Unit at FCI Edgefield; and lack of medical care, but these submissions were rejected for procedural deficiencies.  (Mot. Dismiss Ex. 1 ¶¶ 12-14). The plaintiff elected not to correct or refile his submissions.  (*See id.*)

The plaintiff makes no rejoinder whatsoever as to the exhaustion issue other than to generally state, at various places in his briefing, that he has filed grievances or lodged complaints with certain defendants.  He does not reject, however, the contention that he has not exhausted his remedies.

For his failure to properly refile his grievances in a timely manner and for other procedural reasons (Mot. Dismiss Ex. 1 ¶¶ 12-14), it appears that the plaintiff has probably defaulted his ability to exhaust necessary remedies.  While the Fourth Circuit has not considered this point expressly, the plaintiff's failure to satisfy the exhaustion prerequisite cannot be excused for his inability to cure that failure now.  The United States Supreme Court has refused to "'read futility or other exceptions into'" the Section 1997e(a) exhaustion

requirement. *See Booth*, 532 U.S. at 741 n.6. Moreover, "proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Woodford*, 548 U.S. at *8. Therefore, his *Bivens* claims should be dismissed. *See Yousef v. Reno*, 254 F.3d 1214, 1221 (10th Cir. 2001) (Bivens); *Pozo*, 286 F.3d at 1024 (Section 1983) ("Failure to do what the state requires bars, and does not just postpone suit."); *Spruill v. Gillis,* 372 F.3d 218, 230 (3rd Cir. 2004)); *Gallego v. US*, 2005 WL 1653166 (M.D. Pa 2005) (Bivens).

In the event the District Court rejects this Court's recommendation that the action be dismissed on jurisdictional or exhaustion grounds, the Court would make the following additional recommendations in regards to matters of qualified immunity and personal jurisdiction.

**III.    QUALIFIED IMMUNITY**

In the event the District Court rejects this court's recommendation that the action be dismissed on jurisdictional or exhaustion grounds, this Court would not be able to recommend dismissal based on qualified immunity, as requested by the defendants.

Qualified immunity protects government officials performing discretionary functions from suits for civil damages arising out of the exercise of their discretionary functions, provided that their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Slattery v. Rizzo*, 939 F.2d 213, 216 (4th Cir. 1991) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The plaintiff's rights must be established so clearly that a "reasonable official would understand that what he is doing violates that right." *Slattery*, 939 F.2d at 216 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Accordingly, ruling on a defense of qualified immunity requires "(1) identification of the specific right allegedly violated; (2) determining whether at the time of the alleged violation the right was clearly established; and (3) if so, then determining whether a reasonable person in the [official's] position would have known that doing what

8

he did would violate that right." *Pritchett v. Alford*, 973 F.2d 307, 312 (4th Cir. 1992).

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne,* 526 U.S. 286, 290 (1999); *see also Suarez Corp. Indus. v. McGraw,* 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson,* 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there, "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott,* 156 F.3d 563, 567 (4th Cir. 1998); *see also Young v. City of Mount Rainier*, 238 F.3d 567, 577-78 (4th Cir. 2001) (concluding that the complaint did not allege a constitutional violation, there was no need to consider the question of qualified immunity).

Because this matter is before the Court on a motion to dismiss, the Court is constrained to simply consider whether or not the plaintiff has identified in his Amended Complaint a violation of a constitutional right, which was clearly established at the time of such alleged violation.

### A. Prison Transfer, Classification, and Retaliation Claims

The defendants first seek dismissal of the plaintiff's claims regarding various institutional transfers and prison classification. The defendants characterize the plaintiff as claiming that he was improperly transferred from FCI Allenwood to FCI Edgefield, and was subsequently improperly transferred to FCI Gilmer rather than a medical center. Normally, inmates do not have a constitutionally protected interest in placement in a particular facility. *See Olim v. Wakinekona*, 461 U.S. 236, 244-48 (1983). The Constitution does not

9

guarantee that a convicted prisoner will be placed in any particular prison, s*ee Meachum v. Fano*, 427 U.S. 215, 224 (1976), or even in any particular state, *see Olim*, 461 U.S. at 246.   O'Bar v. Pinion, 953 F.2d 74, 83 (4th Cir.1991) Moreover, prisoners have no constitutionaly protected interest in their classification or custody status.  *Slezak v. Evatt*, 21 F.3d 590, 594 (4th Cir. 1994); *Adams v. Rice*, 40 F.3d 72 (4th Cir. 1994).

The plaintiff, however, has actually alleged (a) that the transfer "was an act of retaliation for exercising his substantial right to file grievances on official misconduct" ([Doc. 25] Supp. Resp. Mot. Definite Statement at 1) and (b) that he was "placed in the Special Housing Unit (SHU), (or the hole), on false charges, that came from filing grievances on official misconduct" ([Doc. 23] Resp. Mot. Definite Statement at 2).   He also contends that he was denied access to the prison law library in retaliation for his grievance activity, *id.*, and subject to other retaliatory acts affecting his access to the courts ([Doc. 25] Supp. Resp. Mot. Definite Statement at 4).

If true, such retaliatory conduct is actionable.  A plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *See Adams v. Rice*, 40 F.3d 72, 75 (4th Cir.1994) "Prisoners do . . . have a constitutionally protected right of access to the courts and to file grievances which includes the right not to be harassed or retaliated against for their exercise." *Green v. Sacchet*, 2002 WL 32639150, at *5 (D. Md. Dec. 10, 2002) (citing *ACLU of Maryland v. Wicomico Co.*, 999 F.2d 780, 785 (4th Cir.1993); *Russell v. Oliver*, 552 F.2d 115, 116 (4th Cir.1977)); *see also Charles v. Reichel,* 67 Fed. Appx. 950, 953 (7th Cir. 2003) ("[P]risoners have a constitutional right of access to the courts, which includes the right to file prison grievances in order to exhaust administrative remedies."); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir.2000) (grievances).  *Cf. Cochran v.* Morris, 73 F.3d 1310 (4th Cir. 1996) (upholding dismissal of retaliation claim for filing grievances only

10

because there was no clear link in the Complaint between the allegation of retaliation and the allegations related to intrastate transfer).    That right is rooted in the First Amendment. *See Mount Healthy Bd. of Ed. v. Doyle*, 429 U.S. 274, 287 (1977); *Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir.1999).

Accordingly, the defendants are not entitled to qualified immunity because the plaintiff has, in the least, pled a violation of his First Amendment right to be free from retaliation for filing grievances.  Moreover, there is no question but that the rights of access to the courts and to file grievances were clearly established at the time of the alleged violations.

### B.    Deliberate indifference

Although the defendants cite substantially the law associated with a deliberate indifference claim, they only summarily contend that the plaintiff has not properly pled a violation of a constitutional right concerning the same.  The Court concludes that the plaintiff has pled a constitutional violation.

Deliberate indifference by prison personnel to an inmate's serious illness or injury is actionable as constituting cruel and unusual punishment contravening the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976).  The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration."  *Id.* at 102.  To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. *See Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir.1990); *Rogers v. Evans*, 792 F.2d 1052, 1058 (5th Cir. 1986).    "Deliberate indifference is a very high standard – a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999).  The test for deliberate indifference has two parts: first, whether the deprivation of medical care was sufficiently serious (objective component)

and second, whether there existed a culpable state of mind (subjective component).  *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991).

For purposes of the qualified immunity analysis, the Court must determine whether the plaintiff has properly pled a violation of his Eighth Amendment right.  Of course, the general eighth amendment right at issue was clearly established at the critical time - in the longstanding principle that a convict may not be subjected to deliberate indifference of a serious medical need.  *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  "But the qualified immunity inquiry must delve deeper, into the more fact-specific question whether a reasonable person in the position of these officials would have known, based upon the information they possessed at the time, that failure to put Beeson in a smoke-free environment would violate that clearly established general right, i.e., would constitute deliberate indifference to a serious medical need."  *Beeson v. Johnson*, 1990 WL 2330, at *3 (4th Cir. January 02, 1990) (citing *Anderson v. Creighton*, 483 U.S. 635, 639-40 (1987); *Tarantino v. Baker*, 825 F.2d 772, 775 (4th Cir.1987) (question not so much the clarity of the general right, but of whether the officials' conduct clearly violated that right)).

The defendants, in cursory fashion, simply contend that the "Plaintiff has not met the objective component and his complaint should be dismissed."  In fact, the plaintiff has complained that he was intentionally refused pain medication for 19 months.  (*See* [Doc. 25] Supp. Resp. Mot. Definite Statement at 6-7.)  A prisoner can prevail on a deliberate indifference claim by demonstrating that medication was intentionally withheld.  *See Estelle v. Gamble*, 429 U.S. 97, 104-05, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Jones v. Martin*, 9 Fed. Appx. 360, 362 (6th Cir. 2001).  Accordingly, the specific sort of deprivation alleged by the plaintiff would potentially constitute a violation of a constitutional right, if proven.

As a consequence, the defendants are not currently entitled to qualified immunity.

12

But certainly, "a finding that a plaintiff has alleged deliberate indifference sufficiently to survive a 12(b)(6) motion to dismiss does not rule out the possibility that facts may later come to light indicating that the defendant behaved reasonably in the circumstances and thus was not deliberately indifferent." *See Marsh v. Butler County, Ala.*, 225 F.3d 1243, 1257 n.7 (11 th Cir. 2000).

Therefore, if the District Court were to decline to accept the recommendation that this case should be dismissed for jurisdictional or exhaustion grounds, then this Court could not recommend dismissal on the basis of qualified immunity.

## IV.    FEDERAL TORT CLAIMS ACT CLAIMS

If Plaintiff is also seeking to assert a tort claim, actions to recover tort damages from federal officials and agencies may be asserted under the Federal Tort Claims Act ("FTCA"). Pursuant to the FTCA, "[t]he United States shall be liable, . . . relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. However, the only proper defendant is the United States, which is not named as a party in this litigation. 28 U.S.C. §2679(a); *see United States v. Smith*, 499 U.S. 160, 167 n. 9 (1991); *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 n.4 (10th Cir. 2001).

Moreover, before pursuing a claim under the FTCA, the plaintiff must first proceed with an administrative filing under 28 U.S.C. § 2675(a):

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

*Id*.

Because the FTCA is a waiver of sovereign immunity, careful compliance with procedural requirements-such as filing of the administrative claim-is not only mandatory but is also "jurisdictional and may not be waived." *Henderson v. United States*, 785 F.2d 121, 123 (4 Cir.1986); *see also Kielwien v. United States*, 540 F.2d 676, 679 (4th Cir.1976). There is no indication in the Complaint that the plaintiff intended an FTCA claim or that the administrative prerequisites for bringing such a claim have been met. Accordingly, any such claims should be dismissed.

## V.    Personal Jurisdiction

Lastly, if the District Court permits this case to go forward, it is recommended that defendants Ray, Yates, and Gibson should be dismissed for lack of personal jurisdiction. "When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff ultimately bears the burden of proving to the district court judge the existence of jurisdiction over the defendant by a preponderance of the evidence." *New Wellington Fin. v. Flagship Resort Dev.*, 416 F.3d 290, 294 (4th Cir.2005). "But when, as here, the court addresses the question on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." *Id*.

The Court has conducted the necessary analysis under *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and its numerous progeny and concludes that personal jurisdiction over these defendants is wanting. Personal jurisdiction arises out of "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). There are two types of personal jurisdiction: general and specific. A court has general jurisdiction over a cause of action that arises outside of the forum state. *See Calder v. Jones*, 465 U.S. 783, 786 (1984). A court has specific jurisdiction over a cause of action which directly arises out of or relates to the defendant's forum state activities.

14

General jurisdiction is permissible under the due process clause when the defendant has an enduring relationship with the forum state, and his connection to and activities in the forum state are so substantial that the defendant would expect to be subject to suit there on any claim and would suffer no inconvenience from defending there. "The essence of the issue . . . is . . . one of general fairness to the [defendant]." *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 445 (1952).

A court has specific jurisdiction over a cause of action, which arises directly out of or relates to the defendant's forum state activities. The South Carolina Supreme Court analyzes specific jurisdiction in a two step process, first examining the applicability of specific subsections of the South Carolina long arm statute and then examining whether jurisdiction violates the due process clause. *See S. Plastics Co. v. S. Commerce Bank*, 423 S.E.2d 128, 130 (S.C.1992). However, because the South Carolina Supreme Court has held that the South Carolina long arm statute is deemed to reach the limits of due process, federal courts normally conduct a single inquiry under the due process clause. *Fed. Ins. Co. v. Lake Shore, Inc.*, 886 F.2d 654, 657 n.2 (4th Cir.1989).

The United States Supreme Court articulated a two-branch due process test for determining specific jurisdiction. *See World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291(1980). The first, the traditional minimum contacts branch, focuses on the defendant's connection with the forum state and the relationship between that connection and the litigation. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-76 (1985). The second branch is frequently referred to as the fairness, convenience, or reasonableness branch. In *World-Wide*, *Burger King* and *Asahi Metal Indus. Co. v. Super. Ct.*, 480 U.S. 102, 113 (1987), the Supreme Court explained that beyond the requirement of minimum contacts, due process requires further factual evaluation to determine whether an assertion of personal jurisdiction comports with fair play and substantial justice. *See Burger King*, 471 U.S. at 476 (quoting *Int'l Shoe Co.,* 326 U.S. at 320).

15

As stated, the plaintiff has the burden of establishing jurisdiction over the defendants. He has made no effort to do so and his own Complaint demonstrates that there are insufficient contacts for this Court to exercise either general or specific jurisdiction over Yates, Ray, and Gibson. This suit did not arise out of defendants Ray's, Yate's or Gibson's contacts with South Carolina. (*See* [Doc. 25], Supp. Resp. Mot. Definite Statement at 1-2.) Nor did they purposefully avail himself of the privilege of conducting business within the forum state, invoking the benefits and protection of its laws so that he could reasonably anticipate being haled in court in South Carolina. Therefore, the nexus between the defendants and South Carolina is simply too tenuous to support personal jurisdiction over them. *See, e.g., Adden v. J.D. Middlebrooks*, 688 F.2d 1147, 1156 (7th Cir.1982) (concluding that federal courts in Illinois had no personal jurisdiction over Louisiana prison officials sued for wrongful death committed in Illinois by escaped Louisiana convicts); *Johnson v. Rardin*, 952 F.2d 1401, 1401 (10th Cir.1992) (unpublished) (BOP Director does not have sufficient minimum contacts with forum state to support personal jurisdiction); *Thornton v. Quinlan*, 864 F. Supp 90, 92 (S.D. Ill. 1994) (declining to exercise jurisdiction over Director of Bureau of Prisons whose only contacts with Illinois were in his official capacity).

Accordingly, those defendants should be dismissed from the case.[2]

---

[2] The defendants also contend that certain defendants should be dismissed on the basis that there is no respondeat superior liability for supervisors in a *Bivens* action. While this is generally true, there remain too many issues of fact surrounding the activity of the various defendants to make such a ruling as a matter of law at this juncture in the case.

16

## <u>CONCLUSION</u>

Wherefore, it is RECOMMENDED that the defendants' Motion to Dismiss be GRANTED.

It is so RECOMMENDED.

s/Bruce H. Hendricks
United States Magistrate Judge

August 14, 2006
Greenville, South Carolina